**Hearing Date and Time: July 31, 2015 at 10:00am**

CATANIA, MAHON, MILLIGRAM & RIDER, PLLC
Attorneys for the Defendant
Yeshiva Ohr Torah
One Corwin Court
Newburgh, NY 12550
(845) 565-1100
rmahon@cmmrlegal.com
Richard M. Mahon, II, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------X
In re:

CONGREGATION BIRCHOS YOSEF

       Debtor.

Chapter 11
Case No. 15-22254 (RDD)

-------------------------------------------------------------------------X
CONGREGATION BIRCHOS YOSEF,

       Plaintiff,

v.

YESHIVA OHR TORAH,

       Defendant.

Adv. Pro. No. 15-08219 (RDD)

-------------------------------------------------------------------------X

**YESHIVA OHR TORAH'S MOTION TO (1) STAY
THE ADVERSARY PROCEEDING; (2) ABSTAIN FROM HEARING
THE ADVERSARY PROCEEDING; AND (3) COMPEL ARBITRATION**

**TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:**

       YESHIVA OHR TORAH ("Yeshiva" or "Defendant"), through its undersigned counsel, submits

this motion in connection with the Adversary Proceeding attendant to the Chapter 11 Bankruptcy filing

of CONGREGATION BIRCHOS YOSEF (the "Congregation" or "Plaintiff") (1) to stay the instant

1

adversary proceeding; (2) for abstention of the Adversary Proceeding pursuant to 28 U.S.C. § 1334(c); and (3) to compel arbitration of the issues in said proceeding to the Bais Din of Rabbi Goldmunzer pursuant to the arbitration clause contained in the Lease Agreement between the parties and the Federal Arbitration Act, and for such other and further relief as this Court shall deem just and proper. Yeshiva Ohr Torah respectfully represents as follows:

## INTRODUCTION

1. On April 24, 2015, Yeshiva moved for this Court to stay the Adversary Proceeding and compel arbitration pursuant to the arbitration clause in the subject Lease Agreement (defined below). The Court denied that Motion on June 26, 2015 but granted leave to Yeshiva to file a motion for abstention on materially different facts than those raised in the initial Motion.

2. Respectfully, this Court should stay this Adversary Proceeding and direct that the disputes raised in the Adversary Proceeding proceed in arbitration before the Bais Din of Rabbi Goldmunzer pursuant to the Lease Agreement between the parties, the Federal Arbitration Act and the Court's necessary abstention from adjudicating such claims.

## PROCEDURAL HISTORY

3. Debtor/Plaintiff CONGREGATION BIRCHOS YOSEF filed for Chapter 11 bankruptcy in the United States Bankruptcy Court on February 26, 2015 and subsequently initiated this Adversary Proceeding on March 18, 2015.

4. Defendant Yeshiva Ohr Torah filed its Answer to Adversary Proceeding, along with a Motion to Compel Arbitration ("Motion to Compel"), on April 24, 2015.

5. Debtor/Plaintiff filed its Objection to the Motion to Compel on June 1, 2015.

6. Defendant filed its Reply Memorandum of Law and Declaration, with Exhibits, on June 19, 2015.

7. A Hearing was held on the Motion to Compel on June 23, 2015. This Court issued an Order on June 26, 2015 denying Defendant's motion.

## BACKGROUND

8. The factual background is more fully set forth in the Declaration of Rabbi Moshe Moskowitz submitted herewith, which statements are incorporated herein by reference. A summary of the relevant facts is as follows.

*A. Submission of Rent Dispute to Bais Din of Rabbi Goldmunzer.*

9. Defendant Yeshiva Ohr Torah entered into a Lease Agreement with Plaintiff Congregation Birchos Yosef on October 17, 2012 for commercial space to house a *yeshiva*, or Orthodox Jewish school, in Monsey, New York ("Lease Agreement"). The Lease Agreement includes the following arbitration provision:

> "[a]ll disputes concerning the application or enforcement of or otherwise arising under and out this Agreement including the option to purchase the premises shall be submitted to a Din Torah for resolution by binding arbitration before the Bais Din of Rabbi Goldmunzer."

10. The Plaintiff and Defendant disputed a provision in the Lease Agreement regarding the use and enjoyment of kitchen facilities in the leased premises soon after the Lease Agreement was executed. Defendant would not submit to the Bais Din of Rabbi Goldmunzer to resolve the kitchen dispute because of a conflict of interest. The kitchen dispute was thereafter resolved in a different forum.

11. Following that dispute, Plaintiff attempted to initiate another dispute resolution proceeding with regard to a new, separate claim that Defendant failed to pay rent under the Lease Agreement. Defendant claimed in opposition that it fulfilled its conditions precedent to exercising the purchase option in the Lease Agreement and Plaintiff failed to uphold its part of the bargain. These claims are referred to herein collectively as the "rent dispute."

12. Plaintiff initiated the dispute resolution process to hear the rent dispute in the Even Hamishpot Bais Din. Defendant did not consent to same, which was its right pursuant to Jewish Law and the Lease Agreement. Instead, Defendant invited Plaintiff to submit to a "Zabla" dispute resolution process, whereby each party would choose an arbitrator, and those two arbitrators would choose a third neutral arbitrator, to sit together and hear the dispute.

13. Plaintiff initially submitted to the Zabla process (see Exhibit "A" annexed to the Declaration of Rabbi Moskowitz). Defendant chose its arbitrator and informed Plaintiff of its choice. Thereafter, Plaintiff inexplicably withdrew from the Zabla process and sought a decree from yet another tribunal (the Sharei Mishpot Bais Din) authorizing its pursuit of its claims against Defendant in secular court. Defendant was not invited to appear before the Sharei Mishpot Bais Din. Plaintiff obtained its decree and thereafter filed for Chapter 11 bankruptcy in the United States Bankruptcy Court on February 26, 2015 and subsequently initiated this Adversary Proceeding on March 18, 2015. Plaintiff never formally initiated a proceeding in, or invited Defendant to submit to, the Bais Din of Rabbi Goldmunzer to adjudicate the rent dispute.

14. The exact same issues that were to be tried before the Zabla panel, to which Plaintiff submitted, have now been raised in the Adversary Proceeding. Although the Plaintiff withdrew from

the process, the Zabla panel is still pending; the automatic stay in place at present precludes the Zabla from going forward.

15. At present, Yeshiva Ohr Torah understands that Rabbi Goldmunzer's previous conflict of interest has been resolved. As such, it is ready and willing to submit the rent dispute to arbitration in the Bais Din of Rabbi Goldmunzer.

*B. Involvement in Interstate Commerce.*

16. Yeshiva Ohr Torah is involved in interstate commerce in several ways.

17. First, Yeshiva Ohr Torah employees three (3) individuals who live in Lakewood, New Jersey, all of whom earn salaries from Yeshiva Ohr Torah. At least one of the employees commutes into New York from New Jersey to work at the Yeshiva, and another performs administrative duties for Yeshiva from her home in New Jersey (see Exhibit "B" annexed to the Moskowitz Declaration).

18. Next, many of the Yeshiva's tuition-paying students travel from out-of-state to attend school at the Yeshiva. Most of the out-of-state students are from New Jersey (the Yeshiva is approximately 6 miles from the New Jersey border), but other students come from England, Austria, Connecticut and California (see Exhibit "C" annexed to the Moskowitz Declaration).

19. Finally, from October 1, 2013 to July 8, 2015, the Yeshiva has received over 200 individual donations from donors who live out-of-state and in other countries, including New Jersey, Pennsylvania, England and Canada (see Exhibit "D" annexed to the Moskowitz Declaration).

# ARGUMENT

## POINT I

### ABSTENTION AND STAY
### IS NECESSARY IN THIS CASE

20. The rent dispute involves solely non-core matters, all of which arise under state law, do not have any impact on the Debtor-creditor relationship (as none exists here) and would be best adjudicated in a different forum. In order to achieve that goal, this Court must abstain from hearing the Adversary Proceeding.

21. "The various types of abstention are not rigid pigeonholes into which federal courts must try to fit cases. Rather, they reflect a complex of considerations designed to soften the tensions inherent in a system that contemplates parallel judicial processes." Pennzoil Co. v Texaco, Inc., 481 US 1, 12, fn 9 [1987].

**A. Mandatory Abstention is Appropriate Because the Adversary Proceeding is Non-Core.**

22. The concept of mandatory abstention for non-core matters is governed by 28 U.S.C. § 1334(c)(2):

> **(c)**…**(2)** Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 USCA § 1334 [West].

23. In applying the code for mandatory abstention, the United States District Court for the Southern District of New York ("SDNY") case of In re Burger Boys, Inc., 183 B.R. 682, 687 (S.D.N.Y. 1994) is strikingly similar to the case at bar.

24. There, the Debtor/Plaintiff, Burger Boys, Inc., argued that its adversary proceeding for breach of contract was a core matter because it involved breaches that occurred both before and after its bankruptcy petition. In re Burger Boys, Inc., 183 B.R. 682, 686 (S.D.N.Y. 1994). Defendant South Street Seaport Limited Partnership argued that the adversary proceeding was non-core, as the causes of action related to the breach of a lease agreement that occurred prior to the filing of the Debtor's bankruptcy petition and involved only state-law claims. Id.

25. The SDNY held that the true issue is whether the cause of action in the adversary proceeding arose *before or after* the Debtor's bankruptcy petition. Id. Since the SDNY found that the cause of action asserted in the adversary proceeding stemmed from an alleged pre-petition breach of the underlying lease agreement, the adversary proceeding was held to be non-core. Id. Thus, the Bankruptcy Court was mandated to abstain from adjudicating same. Id.

26. Additionally, the SDNY in In re Burger Boys, Inc. referenced its prior holding in another similar case, In re J.T. Moran Fin. Corp., 124 B.R. 931, 938 (S.D.N.Y. 1991). There, the Court, relying upon Beard v. Braunstein, 914 F.2d 434, 444–45 (3d Cir. 1990), held that an adversary proceeding involving pre-petition contracts which were initially breached pre-petition but mainly breached post-petition, was nevertheless a non-core proceeding. Despite the fact that the alleged breaches straddled the filing date of the debtor's Chapter 11 petition (as Burger Boys argued they did in that case), the Court held that because the money sought to be recovered was not in the actual or constructive possession of the bankruptcy court nor the debtor and thus was not subject to a turnover proceeding (which 28 U.S.C. § 157(b)(2)(E) characterizes expressly as core), the adversary proceeding was non-core.

7

27. Here, by the Debtor's own words, the breach complained of occurred over a year before Debtor filed its Bankruptcy Petition. The "Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code" on February 26, 2015. <u>Debtor's Complaint</u>, paragraph 6. "On or about October 17, 2012, the Debtor, as landlord, and Defendant, as tenant, entered into a written Lease Agreement…providing for Defendant's use and occupancy of certain demised premises within the Property." <u>Id.</u> at paragraph 9. The Lease Agreement contemplated the payment of certain rents by Defendant to Debtor on certain circumstances. <u>See</u> <u>generally</u> <u>id.</u> Debtor alleges that "the term of the Lease expired on September 4, 2013 at 11:59 p.m. (the 'Lease Termination Date')." <u>Id.</u> at paragraph 19.

28. The Debtor's allegations continue; "Subsequent to the Lease Termination Date, the Defendant remained in possession of the Demised Premises, without the consent, approval or acquiescence of the Debtor, and continues therein as of the date hereof" in contravention of the Lease Agreement. <u>Id.</u> at paragraph 21. As a result, Defendant's obligations to pay rent continued as of that date. <u>See id.</u> at paragraph 22. "The Defendant has failed to remit any rent or use and occupancy payments with regard to the Demised Premises for the period *commencing October 4, 2013*." <u>Id.</u> at paragraph 23 [emphasis added]. Debtor's causes of action against Defendant reiterated the foregoing facts and stem from the breach beginning on October 4, 2013.

29. Additionally, Defendant alleges that Plaintiff's failure to act pursuant to the purchase option following Defendant's satisfactory performance of all conditions precedent thereto likewise occurred before the filing of the instant petition.

30. Thus, since the breaches complained of occurred well before the petition date, this adversary proceeding is decidedly non-core, mandating this Court's abstention. Additionally, even if the

8

non-payment of rents by Defendant were held to be separate and individual breaches of the underlying contract, "straddling" the petition date, abstention would still be appropriate.

31.     Defendant therefore respectfully requests that this Court abstain from hearing the issues raised in this proceeding.

**B. Permissive Abstention in the Alternative.**

32.     Alternatively, should this Court determine that the Adversary Proceeding is core, abstention is still warranted.

33.     Pursuant to 28 U.S.C. § 1334(c)(1):

**(c)(1)** Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

34.     "Manifestly, bankruptcy courts should be guided by principles of comity to respect a pending unresolved state law suit and should not exercise federal judicial authority in the disregard of the comity between the state courts and the federal courts." Id. citing In re Consulting Actuarial Partners, Ltd. Partnership, 72 BR 821, 829 [Bankr SDNY 1987].  This section "codifies the permissive abstention doctrine and demonstrates the intent of Congress that concerns of comity and judicial convenience should be met, not by rigid limitations on the jurisdiction of federal courts, but by the discretionary exercise of abstention when appropriate in a particular case." In re Bally Total Fitness of Greater New York, Inc., 08-14818 BRL, 2011 WL 2118277 [Bankr SDNY May 24, 2011].

35.     "When deciding whether to exercise discretion to permissively abstain from hearing a matter, bankruptcy courts generally consider one or more, though not necessarily all, of the following twelve factors:

  (i)     the effect of abstention on the efficient administration of the estate;
  (ii)    the extent to which state law issues predominate;

9

| | |
|---|---|
| (iii) | the difficult nature of the applicable state law; |
| (iv) | the presence of a related proceeding commenced in state court; |
| (v) | whether there is a basis for federal jurisdiction apart from the debtor's bankruptcy filing; |
| (vi) | the degree of relatedness of a proceeding to the main bankruptcy case; |
| (vii) | the substance, rather than form, of the asserted 'core' proceeding; |
| (viii) | the feasibility of severing state law claims; |
| (ix) | the burden on the court's docket; |
| (x) | the likelihood that commencement of the proceeding in bankruptcy court involves forum shopping; |
| (xi) | the existence of a right to jury trial; and |
| (xii) | the presence in the proceeding of non-debtor parties" |

36. (Id.; see also In re Balco Equities Ltd., Inc., 323 BR 85, 92-93 [Bankr SDNY 2005]; In re JCC Capital Corp., 147 BR 349, 354-55 [Bankr SDNY 1992]; cf In re Lyondell Chem. Co., 402 BR 596, 613 [Bankr SDNY 2009][applying only 7 of the 12 factors]).

37. "The primary concern should be whether the federal bankruptcy objectives are properly served if the Bankruptcy Court conceded the constitutional jurisdiction to a state court, or whether factors of duplication of effort and delay may predominate as a consequence of abstention." In re Texaco Inc., supra, at 438 [Bankr SDNY 1987]. "In particular, it is important to analyze whether abstention could reasonably be considered to have the effect of impairing or delaying either the reorganization of a Chapter 11 debtor or the administration of a Chapter 7 estate for the benefit of all parties in interest." Id. citing 1 W. Norton, Bankruptcy Law and Practice § 5.39 at 199.

38. Here, the factors announced in In re Bally Total Fitness as applied to this case support abstention:

| | |
|---|---|
| (i) | Abstention would have no effect on the administration of the estate as this is an adversary proceeding and the dispute will go forward in arbitration; |
| (ii) | The rent dispute concerns solely state law issues; |
| (iii) | The state law applicable to the disputes involves breach of contract principles as well as issues involve the exercise of purchase options; |
| (iv) | The rent dispute was commenced in the Zabla panel but ultimately stalled due to the instant filing; it would proceed in the arbitration process of the Bais Din of Rabbi Goldmunzer; |

10

    (v)     There is no basis for federal jurisdiction apart from the debtor's bankruptcy filing;
    (vi)    This proceeding is entirely unrelated to the main bankruptcy case;
    (vii)   The substance of the Adversary Proceeding involves solely state-law claims that arose pre-petition;
    (viii)  Severing state law claims is feasible because the Adversary Proceeding involves <u>solely</u> state law claims;
    (ix)    Abstention would relieve burden on the court's docket;
    (x)     It is highly likely that the Debtor's initiation of the instant proceeding was a form of forum shopping as they had previously submitted to the Zabla panel;
    (xi)    Jury trial is not an issue here; and
    (xii)   Defendant is a non-Debtor.

39. In accordance with the foregoing, abstention is proper in this case. Moreover, this Court is further bound by the Federal Arbitration Act ("FAA") to compel the parties to submit to arbitration for the adjudication of the rent dispute.

## POINT II

## THE FEDERAL ARBITRATION ACT APPLIES TO THIS CASE

**A. Federal Arbitration Act, Generally.**

40. "A written provision in any maritime transaction or a contract evidencing a transaction *involving commerce* to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.A. § 2 (West) [emphasis added].

41. The term "commerce" is defined in the FAA as "commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation, but nothing herein

11

contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C.A. § 1 (West).

42. The term "involving commerce" as written in 9 U.S.C.A. § 2 has been interpreted broadly by the Supreme Court to mean "the functional equivalent of the more familiar term 'affecting commerce'-words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 56 (2003); see also JL 33rd St. Associates, LLC v. Pitcairn Properties, Inc., No. 11 CIV. 6399 JSR, 2012 WL 613498, at *3 (S.D.N.Y. Feb. 15, 2012) affd in part, vacated in part, 725 F.3d 184 (2d Cir. 2013).

**B. Applicability of FAA to Commercial Lease Arrangements Concerning Property Located Entirely in One State.**

43. The applicability of the FAA as pertains to commercial leases for property contained entirely within the bounds of one state has been upheld by several courts, including the Northern District of New York (Alexander v. Chesapeake Appalachia, LLC, 839 F. Supp. 2d 544, 550 (N.D.N.Y. 2012) (the FAA applied where the leased land at issue was located entirely within the state of New York, but the parties were incorporated in different states and the product of the lease would ultimately enter the interstate market; further holding that the "ultimate success or failure of such development at this stage does not dictate whether the contracts involve commerce") and the Eastern District of Tennessee (Tanglewood Hospitality Venture, Inc. v. Ogle, No. 3:05-CV-184, 2005 WL 2060769, at *2 (E.D. Tenn. Aug. 25, 2005) (where a commercial lease of property located entirely within the state was held to invoke the FAA where the developed property would market or sell time-share estates to resort guests throughout the world).

44. The District Court for the District of Columbia evaluated an issue similar to the one at bar in the case of Fairchild & Co. v. Richmond, F. & P. R. Co., 516 F. Supp. 1305, 1311 (D.D.C. 1981).

12

There, the parties entered into a commercial lease agreement for the lease of real property located entirely in the State of Virginia. Further, the parties were not diverse in citizenship. Superficially, it would have appeared that there was no basis to find the existence of "commerce" in this transaction. However, the DDC Court found that the lease agreement at issue did "involve commerce" since it was for the development of a retail center that would attract people from Washington, D.C. and Maryland due to its proximity to the Virginia border. This was a sufficient basis to establish the applicability of the FAA in that instance.

45. In addition, the case of A-l A-Lectrician, Inc. v. Commonwealth Reit, 943 F. Supp. 2d 1073, 1078 (D. Haw. 2013), amended (June 27, 2013), included a compelling analysis of the impact that commercial leases have on interstate commerce generally:

> Indeed, in a different context the Supreme Court has held that the rental of real property is an activity which, "unquestionably" affects interstate commerce: "We need not rely on the connection between the market for residential units and the interstate movement of people to recognize that the local rental of an apartment unit is merely an element of a much broader commercial market in rental properties." *Russell v. United States*, All U.S. 858, 860, 105 S.Ct. 2455, 85 L.Ed.2d 829 (1985); see id. at 862, 105 S.Ct. 2455 (rental property is property "used ... in an activity affecting interstate ... commerce" under the federal arson statute); cf. *Hackman* v. *Dickerson Realtors, Inc.,* 520 F.Supp.2d 954, 959 (N.D.I11.2007) (applying FAA where arbitration provision was contained in the bylaws of a local Illinois realtors' association because even local realty activities affect interstate commerce).

46. While A-l A-Lectrician, Inc. dealt with a portfolio of lease agreements, it nonetheless applied the above logic from other cases that held generally that commercial lease arrangements involve commerce to a sufficient degree to invoke the FAA.

47. Here, the Lease Agreement is for the lease of space for an Orthodox Jewish school. This is a private institution that is open only to members of the Orthodox Jewish community; a community which extends beyond the borders of New York State, including into New Jersey and other states and countries.

13

48.     Although the physical location of Yeshiva Ohr Torah is contained within the bounds of the State of New York, Yeshiva Ohr Torah routinely attracts families from outside of New York to enroll their children and pay tuition for same. The families necessarily also engage in interstate commerce when they transport their children from out-of-state into New York for their schooling at Yeshiva Ohr Torah, using interstate highways and potentially using interstate municipal transportation services, and paying the costs attendant thereto. At present, Yeshiva has several out-of-state students enrolled in its program, and has educated nineteen (19) out-of-state students at various times since the execution of the Lease Agreement hailing from New Jersey, England, Austria, Connecticut and California.

49.     Yeshiva also employs three (3) individuals who live in New Jersey and pays them for their work at the Yeshiva. At least one of those employees travels to the Yeshiva from New Jersey to perform his duties and anther performs her duties from her home in New Jersey.

50.     Moreover, Yeshiva has collected over 200 individual donations in the past 1.5 years from out-of-state donors, from New Jersey, Pennsylvania, England and Canada.

51.     Similar to the Fairchild & Co. case, the commercial lease of space contemplated by the Lease Agreement, which contains the arbitration provision at issue, is the basis for Yeshiva's ability to engage in significant forms of interstate commerce. Without this space, Yeshiva would not be able to operate its school; meaning it could not enroll students (some of whom are from out-of-state), employ faculty and administrative staff (some of whom live out-of-state) and solicit and receive donations (some of which come from out-of-state donors). Additionally, as noted in the Alexander case, whether the development *actually* attracts students from out of state is irrelevant - the Lease Agreement

sufficiently contemplated the development of a facility that *could* engage in interstate commerce and, indeed, planned to do so. As such, the FAA applies.

### C. Arbitration Provision in Lease Agreement is Valid and Enforceable.

52. New York courts consistently hold that a party's waiver of the right to arbitrate one specific claim or dispute arising from a common contract does not act to bar the party's subsequent assertion of the right to arbitrate *different* claims or disputes arising from the same contract. Denihan v. Denihan, 34 N.Y.2d 307, 310, 313 N.E.2d 759 (1974) (holding, "As to the claims sought to be redressed in judicial proceedings, there can be no question but that the respondent has waived his right to arbitrate…But as to claims separate and distinct, no waiver of arbitration may be implied from the fact that resort has been made to the courts on other claims arising under a common agreement which remains in full force and effect."); citing Armco Steel Corp. v. Renago Const., Inc., 34 A.D.2d 887, 888, 312 N.Y.S.2d 161 (1970) (where party waived right to arbitrate one dispute arising under a common agreement, party did not waive right to arbitrate other disputes arising under the same agreement); Dandy Dress v. Rae Dress Co., 179 Misc. 36, 37, 37 N.Y.S.2d 449 (Sup. Ct. 1942) (where defendant waived contractual right to arbitration for first cause of action asserted by plaintiff, but reserved the same general contractual right to arbitrate subsequent claims raised by plaintiff in the same action arising from the same agreement).

53. In that way, each isolated dispute arising under a common agreement comes inherent with the renewed right to seek arbitration pursuant to the language of the agreement.

54. As an initial matter, there is no dispute between the parties as to the validity and binding nature of the Lease Agreement; Plaintiff's own filings in this proceeding, which seek to enforce the very terms of the Lease Agreement, evidence its belief and understanding that the Lease Agreement is valid.

15

Additionally, the only basis which Plaintiff has raised to argue that the arbitration provision in the Lease Agreement is invalid is the fact that the Defendant waived its right to submit to the Bais Din named in the arbitration provision with regard to a prior dispute.

55. The dispute between the parties in which Defendant chose not to engage in arbitration before the Bais Din of Rabbi Goldmunzer related solely to a dispute over use of a kitchen facility on the leased premises. See Moskowitz Declaration, paragraphs 3-4. Defendant's argument about the validity of the arbitration provision in that instance was not premised on a general issue of enforceability, but on the fact that the arbitrator named in that provision, Rabbi Goldmunzer, was involved in an arrangement that was undisclosed to Defendant at the time of the lease signing which created a conflict of interest against Defendant. See Moskowitz Declaration, paragraph 4.

56. Following that, the parties engaged in the "rent dispute" which is also the basis of the instant Adversary Proceeding. Pursuant to Jewish Law and the Lease Agreement, Defendant had the right to choose not to submit to the jurisdiction of Even Hamishpot Bais Din that Plaintiff chose. See Moskowitz Declaration, paragraph 6. This was not a waiver of the right to arbitrate – it was simply an exercise of Defendant's right to chose not to submit to that particular venue.

57. Defendant then initiated a dispute resolution process through a "Zabla" panel for the adjudication of the rent dispute, to which Plaintiff initially submitted. Plaintiff then chose to withdraw from the process and sought a decree from another Bais Din to proceed in secular court. Plaintiff never invited Defendant to adjudicate the rent dispute in the Bais Din of Rabbi Goldmunzer.

58. In light of the foregoing case law, even if Defendant's argument against arbitration of the kitchen dispute acted as a waiver of its right to arbitrate same, it would <u>not</u> act a complete waiver of its right to arbitrate different, subsequent disputes arising from the lease agreement – including the rent

16

dispute. Additionally, Plaintiff's invitation to submit to arbitration pursuant to terms *outside* of the Lease Agreement between the parties for the rent dispute (namely to the Even Hamishpot Bais Din) was improper in the first place, and certainly cannot be held as Defendant's waiver of its right to submit to arbitration pursuant to the terms *expressly agreed upon* in the Lease Agreement.

59. Moreover, the fact that Plaintiff never initiated an arbitration proceeding in the Bais Din of Rabbi Goldmunzer, further supports the conclusion that Defendant did not waive its right to arbitrate in that form as there was no invitation to decline and, thus, no affirmative act of waiver of the right to proceed pursuant to the arbitration provision in the Lease Agreement.

60. In sum, that waiver in relation to the kitchen dispute did not operate as a subsequent waiver of the rent dispute, and no further waiver of the arbitration provision has been committed by Defendant. As such, the Lease Agreement and the arbitration provision contained therein are valid and enforceable.

**D. Federal Arbitration Act as Applied to Non-Core Bankruptcy Proceedings.**

61. "Arbitration is favored in our judicial system… and the Arbitration Act mandates enforcement of valid arbitration agreements." In re U.S. Lines, Inc., 197 F.3d 631, 639 (2d Cir. 1999) citing Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 220-21 (1985); Moses H. Cone Mem'l Hosp. v. Mercury Contr. Corp., 460 U.S. 1, 24 (1983); Shearson/Am. Express Inc. v. McMahon, 482 U.S. 220, 226 (1987).

62. Only "where a conflict exists between the Bankruptcy Code and the FAA" does a bankruptcy court retain discretion to "decide whether and when to compel arbitration *if the at-issue proceeding is core.*" In re Brown, 354 B.R. 591, 603 (D.R.I. 2006) citing In re White Mountain Mining Co., L.L.C., 403 F.3d 164, 169 (4th Cir. 2005).

63. "Such a conflict is lessened in non-core proceedings which are unlikely to present a conflict sufficient to override by implication the presumption in favor of arbitration. In re U.S. Lines, Inc., supra, 197 F.3d at 640 (2d Cir. 1999).

64. "[B]ankruptcy courts have the power to stay non-core proceedings in favor of arbitration" and "the presumption in favor of arbitration generally will trump the lesser interest of bankruptcy courts in adjudicating non-core proceedings that could otherwise be arbitrated." In re Crysen/Montenay Energy Co., 226 F.3d 160, 166 (2d Cir. 2000) citing In re U.S. Lines, Inc., 197 F.3d 631, 640 (2d Cir. 1999). Additionally, "bankruptcy courts generally *do not* have discretion to *decline* to stay *non-core* proceedings in favor of arbitration, and they certainly have authority to grant such a stay" of pending bankruptcy proceedings related to the adversary proceedings referred to arbitration. Id. (emphasis in original).

65. The Second Circuit in In re Crysen/Montenay Energy Co. went on to state:

> The implicit conclusion in *U.S. Lines* that bankruptcy courts generally must stay non-core proceedings in favor of arbitration is in harmony with the general principles governing arbitration and bankruptcy law. We have explained that "bankruptcy jurisdiction [is] to be construed as broadly as possible within ... constitutional constraints." *In re Ben Cooper, Inc.,* 896 F.2d 1394, 1398 (2d Cir.), *vacated,* 498 U.S. 964, 111 S.Ct. 425, 112 L.Ed.2d 408 (1990), *reinstated,* 924 F.2d 36 (2d Cir.1991); *see also In re S.G. Phillips Constructors, Inc.,* 45 F.3d 702, 705 (2d Cir.1995). In addition, the Supreme Court has instructed that "[t]he Arbitration Act ... establishes a federal policy favoring arbitration." *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 226, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (internal quotation marks omitted).

66. "Even as to core proceedings, the bankruptcy court will not have discretion to override an arbitration agreement unless it finds that the proceedings are based on provisions of the Bankruptcy Code that 'inherently conflict' with the Arbitration Act or that arbitration of the claim would 'necessarily jeopardize' the objectives of the Bankruptcy Code." MBNA Am. Bank, N.A. v. Hill, 436

F.3d 104, 108 (2d Cir. 2006). "This determination requires a particularized inquiry into the nature of the claim and the facts of the specific bankruptcy." Id. "The objectives of the Bankruptcy Code relevant to this inquiry include 'the goal of centralized resolution of purely bankruptcy issues, the need to protect creditors and reorganizing debtors from piecemeal litigation, and the undisputed power of a bankruptcy court to enforce its own orders.' Id. citing Ins. Co. of N. Am. v. NGC Settlement Trust & Asbestos Claims Mgmt. Corp. (In re Nat'l Gypsum Co.), 118 F.3d 1056, 1069 (5th Cir.1997).

67. As succinctly stated in the case of In re Cooker Rest. Corp., 292 B.R. 308, 311-12 (S.D. Ohio 2003), several other Circuit Courts have held that bankruptcy courts must abstain from hearing non-core proceedings and compel arbitration where the FAA applies to the agreement at issue:

> While neither the Supreme Court nor the Sixth Circuit has definitively addressed this issue, a number of circuits have reached the conclusion that bankruptcy courts, in virtually all instances, must compel arbitration regarding non-core proceedings, assuming that all other requirements of a binding arbitration agreement are present.
>
> Beginning with the case of *Hays & Co. v. Merrill Lynch, Pierce, Fenner and Smith,* 885 F.2d 1149 (3rd Cir.1989), the Third Circuit distinguished between mandatory arbitration of core and non-core proceedings. The court concluded:
>> The question with which we are presented is whether the trustee is bound by that agreement signed by the debtor before entering Chapter 11 bankruptcy. We hold that the trustee-plaintiff stands in the shoes of the debtor for the purposes of the arbitration clause and that the trustee-plaintiff is bound by the clause to the same extent as would the debtor.
>
> *Id.* at p. 1153.[1]
>
> Thereafter, other courts of appeals have agreed that arbitration agreements in non-core proceedings are subject to arbitration, notwithstanding the filing of a Chapter 11 petition. *In the Matter of Gandy,* 299 F.3d 489, 494 (5th Cir.2002), the court noted, "... it is generally accepted that a bankruptcy court has no discretion to refuse to compel the arbitration of matters not involving 'core' bankruptcy proceeding under 28 U.S.C. § 157(b)." The Fifth Circuit reached the same conclusion in *In re National Gypsum,* 118 F.3d at 1065.

68. Taking the Third Circuit and Fifth Circuit jurisprudence together with the Second Circuit jurisprudence (cited above), the Southern District of Ohio concluded, "Three courts of appeals have

19

found that with regard to non-core proceedings, a bankruptcy court has no discretion to deny a stay and compel arbitration, assuming that the parties have in fact agreed to a valid and binding arbitration agreement. No court of appeals has held to the contrary." Id.

## CONCLUSION

69. Here, this adversary proceeding is decidedly non-core, the FAA applies and the Lease Agreement and arbitration provision therein are valid and binding. The Court must therefore stay the instant Adversary Proceeding and compel the parties to submit the rent dispute to arbitration in accordance with the Lease Agreement. Even if this proceeding were core, the controlling precedent and Federal Arbitration Act strongly support the submission of these matters to arbitration since doing so would not represent a conflict between the Federal Arbitration Act and the Bankruptcy code and would not jeopardize any of the objectives of the Bankruptcy Code.

WHEREFORE, the Defendant respectfully requests entry of an order granting the relief requested herein and such other and further relief as is just.

Dated: Newburgh, New York
July 9, 2015

                                                  CATANIA, MAHON,
                                                   MILLIGRAM & RIDER, PLLC
                                                  Attorneys for the Defendant
                                                  Yeshiva Ohr Torah

                                                  By: */s/ Richard M. Mahon, II, Esq.*
                                                       Richard M. Mahon, II, Esq. (RM 9260)

                                                  One Corwin Court
                                                  Newburgh, NY
                                                  (845) 565-1100
                                                  rmahon@cmmrlegal.com